61 P.3d 22

Carla LIRISTIS, individually and on behalf of her minor child, Niko Liristis, Raymond Skiba and Christopher Liristis and Amy Liristis, individually and on behalf of their minor child; Steven Liristis, Plaintiffs–Appellants, Cross–Appellees,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant–Appellee, Cross–Appellant.

No. 1 CA–CV 00–0539.

Court of Appeals of Arizona, Division One, Department E.

June 27, 2002.

As Amended and Redesignated as Opinion Dec. 26, 2002.

Review Denied January 7, 2003.

Valley, CA, By Amy Bach, for Amicus Curiae United Policyholders.

## OPINION

GEMMILL, J.

¶ 1 Plaintiffs [1] appeal the summary judgment entered in favor of American Family Mutual Insurance Company ("American Family"). The trial court found there was no coverage under Plaintiffs' homeowners insurance policy for the mold contamination of their home that was allegedly caused by water used to extinguish an accidental fire. We find a question of fact regarding coverage and therefore reverse the judgment in favor of American Family and remand for further proceedings. We affirm the court's denial of American Family's request for attorneys' fees.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 We view the facts and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. *In re 1996 Nissan Sentra,* 201 Ariz. 114, 116, ¶ 2, 32 P.3d 39, 41 (App.2001). Plaintiffs are the owners and residents of a home insured by an American Family homeowners policy. In August 1996, there was a fire in the home resulting in fire damage and also water damage, because of· the water used to suppress the fire. A contractor performed repairs, and American Family paid $31,370.99 to the Plaintiffs directly or on their behalf for claims related to that fire. Plaintiffs claim they noticed mold growth in the home within a month or two after the 1996 fire. Upon moving back into the home, Plaintiffs suffered allergic reactions and respiratory and other unexplained illnesses.

¶ 3 Following the repairs after the 1996 fire, the roof leaked each time it rained. Plaintiffs reported the first leak to American Family, and the contractor attempted to repair the roof. However, the roof continued to leak with each rain, which resulted in water soaking the walls, ceiling, carpet and property inside the home. Plaintiffs notified

Dixon Ryan, P.L.C., Phoenix, By Thomas B. Dixon, for Plaintiffs–Appellants/Cross–Appellees.

Mariano & Allen, P.L.C., Phoenix, By Lynn M. Allen, for Defendant–Appellee/Cross–Appellant.

Treon, Strick, Lucia & Aguirre, Phoenix, By Richard T. Treon, Anderson, Kill & Olick, P.C., New York, NY, By Eugene R. Anderson, Law Offices of Amy Bach, Mill

---

1. We refer to the six individual plaintiffs collectively as "Plaintiffs."

American Family of these additional leaks in July 1997, when Plaintiffs filed a claim for water damage caused by a leaking evaporative cooler on the roof.

¶ 4 In 1998 Plaintiffs retained an expert to perform an environmental assessment of their home. The expert confirmed the presence of mold growth in the home. Specifically, he found *Stachybotrys*, which produces harmful mycotoxins and other molds that produce allergic reactions. American Family also had an environmental assessment done, which confirmed the presence of *Stachybotrys*. American Family's consultant recommended immediate biological remediation to the home.

¶ 5 In July 1998, Plaintiffs made a claim for contamination caused by the mold. American Family denied the claim based on a policy exclusion for mold. Thereafter Plaintiffs filed a complaint alleging breach of contract, bad faith and unfair insurance trade practices. Both parties moved for summary judgment on the issue of coverage. The trial court concluded that there was no coverage for the mold damage, denied Plaintiffs' motion, and granted summary judgment in favor of American Family. The court then entered judgment for American Family on all counts. The record reflects that Plaintiffs did not object to this form of judgment. The court denied American Family's request for attorneys' fees. Plaintiffs appealed from summary judgment entered in favor of American Family, and American Family cross-appealed from the denial of attorneys' fees.

### DISCUSSION

■ ¶ 6 We apply a *de novo* standard of review when evaluating whether summary judgment was proper. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 194–95, 805 P.2d at 1015–16.

2. The parties agree the covered "property" in-

¶ 7 The insuring clause of the American Family homeowners policy states in pertinent part:

> **We** cover risks of *accidental direct physical loss* to property [2] ... unless the loss is excluded in this policy.

(Italics added).

The policy then sets forth the following losses-not-covered provisions:

> **We** do not cover *loss* to the property ... *resulting directly or indirectly from or caused by* one or more of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

\* \* \*

6. **Other *Causes* of Loss:**

a. wear and tear, marring, scratching, deterioration;

b. inherent vice, latent or inherent defect, mechanical breakdown;

c. smog, rust, corrosion, frost, condensation, *mold*, wet or dry rot;

d. smoke from agricultural smudging or industrial operations;

e. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

f. birds, vermin, rodents, insects or domestic animals.

(Italics added).

■ ¶ 8 Plaintiffs argue that the mold damage is an "accidental direct physical loss" to the home, caused by the water used to extinguish the 1996 fire, a covered loss. According to Plaintiffs, the policy does not exclude damages from covered events and mold damage is covered, in contrast to damage caused by mold. American Family initially responds that Plaintiffs have waived this argument by failing to assert it in the trial court. Plaintiffs counter that they consistently argued in the trial court for coverage under the precise policy language now at issue and they should not be precluded from asserting an additional reason why the policy language should be interpreted in favor of

cludes the home.

coverage. The record reveals that American Family is correct that this specific argument was not presented by Plaintiffs to the trial court, but it is also true that Plaintiffs sought coverage under the same policy language at issue here.

¶ 9 Ordinarily, we do not allow new issues or arguments to be raised for the first time on appeal. *Paloma Inv. Ltd. P'ship v. Jenkins,* 194 Ariz. 133, 137, ¶ 17, 978 P.2d 110, 114 (App.1998). While American Family characterizes Plaintiffs' argument as a new issue, Plaintiffs insist they have always argued that the language of the policy provided coverage for mold damage and they are entitled to assert on appeal an additional reason for that conclusion. Regardless whether the argument is a "new issue" or simply an "additional reason" for coverage, we conclude that the argument has not been waived, for the following reasons.

■ ¶ 10 When the parties have tendered an insurance policy to the court for a coverage ruling, the court has discretion to read and interpret the policy correctly and is not necessarily limited to the arguments made by the parties. *See Chase v. State Farm Fire & Cas. Co.,* 780 A.2d 1123, 1133 n. 12 (D.C.Ct. App.2001) (considering a policy provision not relied upon by the insured in support of coverage because "where a legal theory that a party does advance is grounded on a contract that is before the court, the court does have a duty to read the contract without blinkers on, so that it can discern the meaning and applicability of its provisions correctly"); *see also Evenstad v. State,* 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993) ("[W]hen we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result.").[3] Whether this policy covers mold damage caused by the fire is the fundamental coverage issue presented and we must address it.

■ ¶ 11 Furthermore, the waiver rule is procedural rather than jurisdictional, *Even-*

---

**3.** Although the court in *Evenstad* was addressing a question of statutory interpretation, we find the principle it sets forth analogous and helpful regarding the interpretation of an insurance policy

---

*stad,* 178 Ariz. at 582, 875 P.2d at 815, and we may forego application of the rule when justice requires. "If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue." *Id.* (citing *Rubens v. Costello,* 75 Ariz. 5, 9, 251 P.2d 306, 308 (1952)). It is also significant that both parties have briefed and argued the issue extensively and there is no claim of surprise. *See Stokes v. Stokes,* 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App.1984) (the waiver rule "is intended to prevent surprise"). Under these circumstances, we choose to reach the substantive issue presented.

■ ¶ 12 American Family next argues that mold is excluded under the losses-not-covered provisions, based on the plain language of the policy. The parties agree that mold could be both a loss and a cause of loss. *See Phillips Home Builders, Inc. v. Travelers Ins. Co.,* 700 A.2d 127, 129–30 (Del.1997) (finding that settling of concrete slab can be both loss and cause of loss). However, the parties disagree about the significance of this distinction. We agree that mold may be either damage or a cause of loss, depending on the circumstances. For the reasons that follow, we hold that mold damage caused by a covered event is covered under the American Family policy in this case. On the other hand, losses caused by mold may be excluded.

■ ¶ 13 The interpretation of an insurance contract is a question of law to be decided by this court independent of the trial court's conclusions. *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). We construe provisions of an insurance policy according to their plain and ordinary meaning. *Nat'l Bank of Ariz. v. St. Paul Fire & Marine Ins. Co.,* 193 Ariz. 581, 584, ¶ 14, 975 P.2d 711, 714 (App.1999). The language used in an insurance contract must be viewed from the standpoint of the average layman who is untrained in the law

---

because in both instances we are called upon to discern the intent and meaning of the words used.

or the field of insurance. *Thompson v. Gov't Emp. Ins. Co.*, 122 Ariz. 18, 21–22, 592 P.2d 1284, 1287–88 (App.1979). If an insurance policy is subject to different interpretations, our supreme court has directed that we interpret the policy provisions by examining the specific language of the provisions, any applicable public policy considerations, and the purpose of the transaction as a whole. *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989). The parties in this dispute argue for conflicting, yet reasonable, interpretations of the American Family policy language. Because the language in the policy is susceptible to differing interpretations, we are obligated to follow the analytical framework set forth in *Wilson*. We begin by examining the specific language of the policy.

### Language of the Losses–Not– Covered Provisions

¶ 14 Our analysis begins with the losses-not-covered language. *See* ¶ 7, *supra*. American Family contends that mold damage is excluded under the losses-not-covered provisions because the policy does "not cover loss to the property . . . resulting directly or indirectly from or caused by [mold]." In response, Plaintiffs urge the distinction between mold which is the loss or damage from a covered event compared to loss that is caused by mold. Stated another way, Plaintiffs argue that the loss to the property was not caused by mold; rather, it *was* mold, and thus the losses-not-covered provisions do not apply under these circumstances.

¶ 15 Careful examination of the language used by American Family supports the distinction between mold damage and loss caused by mold. Substituting "mold" for "one or more of the following" yields this language:

> **We** do not cover loss to the property . . . resulting directly or indirectly from or caused by [mold]. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

This language does not exclude all mold. Rather, it excludes loss "resulting directly or indirectly from or caused by" mold. If American Family had intended to exclude not only losses caused by mold but also mold itself, it could have easily expressed that intention. *See Indus. Indem. Co. v. Goettl*, 138 Ariz. 315, 322, 674 P.2d 869, 876 (App. 1983) (an insurance company that wishes to limit coverage must use language that clearly communicates the limitation). For example, the following language from a State Farm policy was quoted in *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 95, 804 P.2d 822, 824 (App.1990):

> We do not insure for any loss to the property described in Coverage A *either consisting of*, *or* directly and immediately caused by, one or more of the following:

(Emphasis added). If American Family had added the words "either consisting of, or . . ." to its exclusionary language, then loss "consisting of" mold as well as loss caused by mold would be subject to this restrictive language.

¶ 16 Similarly, the policy lists "mold" in sub-paragraph "6.c" of the losses-not-covered provisions. Paragraph 6 is entitled: **"Other Causes of Loss."** This language again focuses on "causes" of loss, conveying the intention to exclude mold as a cause of loss. But mold which is the loss is not mentioned. To express the intention to exclude all mold, the company could have chosen "Other Excluded Losses" or "Other Losses Not Covered" as the title of paragraph 6.

¶ 17 American Family responds by arguing that the cost of removing the mold is excluded under the policy as loss caused by mold. We conclude, however, on the basis of the overall policy language and the considerations set forth in this decision, that if Plaintiffs prove the mold resulted from the fire, then the cost of removing the mold is not a "loss" separate from or caused by the mold itself but rather is simply the implementation of the mold damage coverage provided to the homeowners under the policy. Phrased differently, when a covered event causes mold, the mold damage includes the cost of removal.

*Purpose of the Transaction as a Whole* [4]

¶ 18 Fire insurance "is intended to cover every loss, damage, or injury proximately caused by fire, and every loss necessarily following directly and immediately from such peril or from the surrounding circumstances, the operation and influence of which could not be avoided." 5 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 3082 (1970). The purpose of the transaction between Plaintiffs and American Family—the purchase of a homeowners policy which includes fire insurance—supports interpreting the policy to cover mold damage caused by fire.

¶ 19 Plaintiffs also contend that American Family covered other losses caused by the fire such as marring, scratching, and deterioration, plus cracking and bulging of walls, floors, and ceiling.[5] These items, like mold, are listed as "other causes of loss" in the policy (quoted in ¶ 7, *supra* ). According to Plaintiffs, mold should be either covered or excluded consistent with these other damages, but American Family is attempting to use the losses-not-covered provisions to exclude only mold, while covering these other forms of damage which are also caused by the fire. Plaintiffs argue that American Family's coverage of these other categories of fire and water damage confirms that the policy is intended to provide coverage for all accidental damages caused by a covered event.

¶ 20 American Family contends that Plaintiffs' argument fails to take into account two rules of construction that apply to written instruments: *noscitur a sociis* and *ejusdem generis*. "[*N* ]*oscitur a sociis* [ ] enables one to ascertain the meaning of doubtful words by referring to the meaning of accompanying words." *In re Rubi*, 148 Ariz. 167, 172, 713 P.2d 1225, 1230 (1985). Under *ejusdem generis*, when a general term follows specific terms, "the general term is interpreted as of the same class or type as the specific terms." *In re Julio L.*, 197 Ariz. 1, 4, ¶ 11, 3 P.3d 383, 386 (2000). We do not find these two rules of construction to be helpful here, and we decline to embrace them in this case.

¶ 21 The overall purpose of the American Family policy was to provide coverage for "risks of accidental direct physical loss to property ... unless the loss is excluded in this policy." *See* ¶ 7, *supra*. The policy does not exclude mold damage caused by a covered event. Plaintiffs are entitled to coverage for the mold damage caused by the fire and the water used to extinguish the fire, including the cost of removal or repair of the damage.

### Summary Regarding Mold Damage Coverage

¶ 22 Plaintiffs allege that the mold damage in their home was "direct physical loss" from the 1996 fire, a covered event. American Family conceded the causal connection only for purposes of its motion for summary judgment, and argues that the actual mold in the home resulted from one or more excluded causes. A question of fact is presented as to whether some or all of the mold damage was caused by the 1996 fire. *See Schultz v. Erie Ins. Group*, 754 N.E.2d 971, 977 (Ind.App.2001) (remanding to trial court to determine cause of loss). If Plaintiffs can prove the causal connection with the 1996 fire, then the losses-not-covered provisions do not defeat coverage. If Plaintiffs cannot prove the causal connection, then

---

4.  The second prong of the analytical framework provided by our supreme court in *Wilson* pertains to any applicable public policy considerations. Here, the parties have not identified any statutes setting forth particular public policy considerations supporting their proposed interpretations. In contrast, insurance policies providing uninsured and underinsured motorist benefits and motor vehicle liability coverage have been the subject of specific legislative enactments. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 20–259.01 (Supp.1998) and 28–4009 (Supp.1998). We do not find any legislative declarations of public policy regarding homeowners insurance policies to be applicable here. We therefore proceed to consider the purpose of the transaction as a whole.

5.  Plaintiffs did not offer any specific evidence of the type of damages that American Family covered as a result of the 1996 fire, and American Family responds that there is nothing in the record to suggest that mold was treated differently than any other potential damage from the fire. Our analysis of this argument is based solely on the language of the policy.

there will be no coverage. Accordingly, we remand for further proceedings consistent with this decision.

¶ 23 Because we have concluded that the policy covers mold damage caused by the fire and because we are remanding for resolution of factual issues, we do not reach or determine the meaning of the "concurrent causation" provision or the "resulting loss" clause. The concurrent causation provision is the second sentence in the losses-not-covered portion of the policy. *See* ¶ 7, *supra.* The resulting loss clause is the final sentence of the losses-not-covered provisions, and states: "However, we do cover any resulting loss to property ... from items 2 through 8 above, not excluded or excepted in this policy." If the trier of fact finds the mold in this case to be a cause of loss as opposed to damage from the fire or to be the result of an excluded cause, the applicability and meaning of the concurrent causation provision and the resulting loss clause may need to be determined.[6]

### Bad Faith Claims

¶ 24 Plaintiffs argue that the trial court erred in granting summary judgment on the bad faith claims because the complaint alleged several acts of bad faith that were independent from the underlying coverage issue. We note that American Family did not clearly seek summary judgment on the bad faith claims. Further, the court's minute entry granting American Family's motion for summary judgment on the coverage issue did not address the bad faith claims. The record is not entirely clear why the court entered judgment for American Family "on all of plaintiffs' claims asserted in the complaint." Plaintiffs acknowledge they never objected to this form of judgment but contend they had no obligation to do so because the court informed the parties that it found the coverage issue determinative of all issues raised by Plaintiffs. Because we are remanding and the record reveals considerable doubt whether the bad faith claims were actually adjudicated, we also reverse American Family's judgment on these claims and remand for further proceedings.

### Cross Appeal: American Family's Request for Attorneys' Fees

¶ 25 American Family cross appeals from the trial court's denial of its request for attorneys' fees pursuant to A.R.S. § 12–341.01(A) (Supp.2000). Because we have reversed the judgment in favor of American Family, it is no longer a successful party entitled to fees. Accordingly, we affirm the denial of American Family's fee request, but note that an award of fees remains within the court's discretion on remand.

### Attorneys' Fees on Appeal

¶ 26 Both Plaintiffs and American Family request attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A). Because the parties have made reasonable arguments and the outcome is not yet known, we exercise our discretion to deny all requests for fees on appeal.

### CONCLUSION

¶ 27 We reverse the summary judgment in favor of American Family and remand for further proceedings consistent with this decision. We affirm the denial of American Family's request for attorneys' fees at trial and we deny each party's request for attorneys' fees on appeal. Plaintiffs are awarded their taxable costs on appeal.

CONCURRING: MICHAEL D. RYAN, P.J., and ANN A. SCOTT TIMMER, J.

---

**6.** We also do not reach Plaintiffs' argument for coverage based on the policy provisions providing Supplementary Coverage for Pollutant Cleanup and Removal.